IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARSHA L. BOOKER<br>1239 Lawrence Street, N.E.<br>Washington, D.C. 20017,<br><br>    Plaintiff,<br><br>vs.<br><br>ANNE-IMELDA M. RADICE, Ph.D., DIRECTOR<br>INSTITUTE OF MUSEUM & LIBRARY<br>SERVICES,<br>1800 M Street, 9th Floor<br>Washington, D.C. 20036,<br><br>    Defendant. | Civil Action No.<br><br>JURY TRIAL DEMAND |

**COMPLAINT FOR UNLAWFUL EMPLOYMENT PRACTICES**

I.    **Preliminary Statement**

1. Plaintiff, Marsha L. Booker, brings this action for unlawful employment practices and retaliation perpetrated by Defendant Institute of Museum & Library Services, (hereinafter, "IMLS" or "Institute") in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, as amended.  Consequently, Plaintiff demands declaratory and injunctive relief, back pay, compensatory damages, and other appropriate relief, legal and equitable, against the Defendant Institute.  Plaintiff demands trial by jury on all issues.

II.    **Jurisdiction and Venue**

2. The jurisdiction of this Court is invoked to secure the protection of and to redress the deprivation of rights secured to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, (Supp. II, 1991), which provides for injunctive, equitable and other

relief against discrimination in employment on the basis of race, sex, religion, national origin and color, and by the Age Discrimination in Employment Act (ADEA). Plaintiff has met all jurisdictional prerequisites for bringing this action.

3. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4), and this Court's pendent jurisdiction, this being a suit authorized and instituted under the Civil Rights Act of 1964, as amended, and 28 U.S.C. Sections 2201 and 2202.

4. This proceeding is instituted in the United States District Court for the District of Columbia pursuant to 28 U.S.C. Section 1391, as the judicial district in which the cause of action arose and in which the Defendant is located and doing business.

### III.  Parties

5. Plaintiff, Marsha L. Booker, is an African American (Black) female citizen of the United States, over 40 years of age, residing in Washington, D.C., who at all time relevant hereto was, employed as a Human Resources Specialist, GS-0201-9 by the Defendant IMLS, working in the Institute's offices at 1800 M Street, N.W., 9th Floor, Washington, D.C. 20036.

6. Defendant, Anne-Imelda M. Radice, Ph.D., is the Director of the Institute of Museum and Library Services, an independent federal agency, and was so employed at all times relevant to this Complaint.

### IV.  Statement of Facts

7. Plaintiff is an African American (Black), female, over 40 years of age, with over Twenty-three (23) years of successful service as a federal employee.

8. At all times relevant, Plaintiff was employed as a Human Resources Specialist (Information Technology/Benefits), GS-0201-11, in the Human Resources Office, Institute for Museum and Library Services, 1800 M Street, N.W., 9th Floor, Washington, D.C. 20036.

9. Plaintiff began her federal employment with the IMLS on or about November 14, 2004 as a Human Resources Specialist (Information Technology/Benefits), GS-0201-9, a career ladder position with a full performance level at GS-13, and her immediate supervisor was the Human Resources Officer, GS-0201-14, Harry Baldauf (white male).

10. After completion of her first year, Plaintiff's performance was rated as outstanding by the Human Resources Officer, and she was promoted to Human Resources Specialist (Information Technology/Benefits), GS-0201-11, on or about August 6, 2005.

11. In or about June 2006, Carol Scannelli (white female) who came to IMLS in April as the Counselor to the Director was detailed to the position of Acting Director of Administration/Budget, with the Human Resources Officer reporting to her.

12. In or about July 2006, Human Resources Officer Harry Baldauf left IMLS and transferred to the Department of Justice, but prior to his departure he submitted a memorandum to Carol Scannelli for Kate Fernstrom recommending the career ladder promotion of Plaintiff, Marsha L. Booker, to Human Resources Specialist (Information Technology/Benefit), GS-0201-12, with a completed Performance Appraisal and SF-52 for Plaintiff attached.

13. Plaintiff was eligible for promotion to Human Resources Specialist (Information Technology/Benefits), GS-0201-12 in August 2006.

14. On or about August 1, 2006, Plaintiff e-mailed IMLS Chief of Staff, Kate Fernstrom (white), inquiring as to when she would receive her career ladder promotion to GS-12, and Ms. Fernstrom asked to see her paper work. Plaintiff hand delivered to Chief of Staff Fernstrom a copy of Human Resources Officer Baldauf's recommendation for her promotion, her Performance Appraisal, and SF-52, which had been submitted to Carol Scannelli in July 2006.

15. Within the same week, Ms. Scannelli informed Plaintiff that she and Ms. Fernstrom had talked and that she would receive her promotion some time in October when a new HR Officer was hired.

16. Plaintiff asked Ms. Scannelli why should she have to wait for the new HR Officer who would not be able to evaluate her for at least three (3) months, and why she was being penalized. Ms. Scannelli responded that Plaintiff was not being penalized, they just wanted the new HR person to give it to her.

17. After the July 7, 2006 departure of HR Officer Baldauf, Plaintiff was the only remaining Human Resources Specialist at IMLS, and was called upon by management and staff to cover all HR responsibilities, including those previously preformed by the HR Officer.

18. In addition to her regular HR duties, Plaintiff now had to perform duties previously performed by the HR Officer. Those duties included, among others: a) recruitment and staffing, including preparing announcements, rating and ranking applicants, preparing the certificates of eligibles; b) assisting manager with the preparation of job analysis and modifying position descriptions; and c) communicating offers of employment.

19. Plaintiff was now also required to perform HR Officer responsibilities with regard to developing and revising Agency policies regarding administrative practices, advising employees and managers regarding pay and leave administration, as well as performance management information, participate in employee relations activities and providing technical advice to managers, initiating preparation of SF-52s (Request for Personnel Action), and preparing HR related reports.

20. In addition, Plaintiff also now attended, daily audit meetings and Contingency Operation Oversight Planning (COOP) meetings.

21. After HR Officer Baldauf left IMLS in or about July 2006, Ms. Scannelli singled Plaintiff out and began to treat her differently in the terms and conditions of her employment then other employees because of her race.

22. Ms. Scannelli constantly cursed and used profanity in dealing with Plaintiff, shouted at Plaintiff and continually harassed Plaintiff, and incorrectly telling her that she did not know HR procedures and regulations.

23. Ms. Scannelli continually knocked on Plaintiff's office door, interrupting her and asking her who she was working for and what she was working on, going behind her and communicating incorrect information to the staff, and undermining her with other staff members under Ms. Scannelli's supervision, and embarrassing Plaintiff.

24. Ms. Scannelli's treatment caused Plaintiff to suffer severe headaches, unnecessary stress, and embarrassment.

25. Plaintiff communicated many of the problems that she was having in dealing with Ms. Scannelli to IMLS Chief of Staff, Kate Fernstrom via e-mail and orally, but had not requested that any specific action be taken.

26. On or about August 24, 2006, Plaintiff went to Kate Fernstrom, IMLS Chief of Staff and requested a permanent reassignment from the HR Office to the Library or Museum staff in some other capacity until the vacant HR Officer position was filled.

27. Plaintiff requested the reassignment because of her treatment by Carol Scannelli and again explained to Ms. Fernstrom what Ms. Scannelli was doing and how this treatment was adversely affecting her.

28. IMLS Chief of Staff Fernstrom informed Plaintiff that she had conveyed her prior communications regarding her treatment to the Director and alerted her to the problem, but that they needed her to continue in Human Resources because there was no one else to perform the work. To accomplish this, Ms. Fernstrom reassigned Plaintiff to report directly to her, even though she would still have to interact with Ms. Scannelli.

29. While other African American (Black) IMLS employees may have commented about Ms. Scannelli's treatment of them, they were afraid to complain to management for fear of retaliation.

30. Plaintiff was concerned about complaining to Chief of Staff Kate Fernstrom (white) about Carol Scannelli (another white female supervisor) due to possible retaliation, and this concern was also communicated to her by various members of the IMLS staff, at least one of whom even said that they would get her for complaining about a white supervisor.

31. Plaintiff tried to make her complaint in a way that avoided expressly raising racism directly although she felt it was the cause of her treatment because she was afraid of the fallout and possible retaliation.

6

32. After Plaintiff's reassignment, Ms. Scannelli made sure that Plaintiff knew that she was aware of her complaining about her to Kate Fernstrom.

33. Following Plaintiff's complaints to Kate Fernstrom about Ms. Scannelli, her reassignment, and Ms. Scannelli's learning that she had complained about her, Ms. Scannelli's harsh treatment of Plaintiff intensified.

34. Ms. Scannelli ease dropped on confidential employee counseling sessions conducted by Plaintiff, made special efforts to undermine her with other employees, put Plaintiff out of a meeting and publicly embarrassed her during a telephone conference, and was generally disrespectful.

35. Following Plaintiff's complaints to Chief of Staff Kate Fernstrom about Ms. Scannelli treatment of her, Ms. Scannelli, and later Ms. Fernstrom created and maintained a hostile, discriminatory and retaliatory work environment, including the conduct previously described, as well as shouting at her, further undermining her work with the employees and publicly and privately embarrassing her.

36. It was rumored around the IMLS Office, and at least one employee told Plaintiff right out that Plaintiff should have known that they would get her for complaining about Scannelli a white supervisor.

37. In or about early September 2006, Plaintiff informed Ms. Fernstrom that the person selected for the HR Officer's position had declined the job offer, and Plaintiff asked Ms. Fernstrom if she had a second choice for the HR position. s. Fernstrom said no. At that time Plaintiff inquired of Ms. Fernstrom about her career ladder promotion and was told that she might get it in November if IMLS had the money.

38. In or about mid September, Chief of Staff Fernstrom brought Plaintiff a list of Special Act Awards and Performance Awards, and asked her to keep the Special Act Awards confidential.

39. The Special Act Awards were cash awards given for participation in the IMLS audit, and totaled $26,000, $25,000 of that being given to six white females, and $1,000 being given to a Hispanic male. Ms. Fernstrom, and Ms. Weiss, received a Special Act Award of $5,000, Ms. Scannelli and Ms. Bittner each received $4,000, and Ms. Semmel Ms. Kennelly received $3,500 each.

40. Ms. Semmel also received a Performance Award of $3,315.40, although her Performance Appraisal was not due until December 2006, and her award should not have been payable until 2007.

41. Despite Plaintiff's substantial participation in the audit as the sole HR person, she did not receive any cash award, nor did any other African American (Black) employee.

42. The Performance Awards given totaled over $42,000, and even though Plaintiff had to perform the duties of her regular position and as well as many of the duties of the vacant HR Office's position, she did not receive any performance award.

43. In or about October 2006, all IMLS employees, including those who received Special Act Awards in September, received a non-monetary Time Off Award of 8 hours for audit participation, even though many of them did not participate in the audit.

44. In October 2006, per Ms. Fernstrom's instructions to Plaintiff, a white female GS-13 employee was temporarily promoted to GS-14 for a second time. This employee had previously received a temporary promotion to GS-14 for the same position in June

2006.

45. On November 30, 2006, Plaintiff asked Chief of Staff Kate Fernstrom about her performance appraisal, and Fernstrom instructed her to give her an accomplishment report. At that time, Plaintiff also again inquired about her career ladder promotion to GS-12 and was told that she might get her promotion in February or March of 2007 when a new HR Officer was hired and if IMLS has the money.

46. Following Plaintiff's complaints about her treatment by Ms. Scannelli to Chief of Staff Kate Fernstrom, her career ladder promotion had been repeatedly delayed; and Ms. Fernstrom's treatment of Plaintiff hardened and she became more abrupt in her responses to Plaintiff.

47. On December 18, 2006, Plaintiff again asked Ms. Fernstrom about her career ladder` promotion, and was told by Fernstrom that IMLS did not have the money. Further, Ms. Fernstrom asked Plaintiff did she think that she was entitled to a promotion, to which Plaintiff responded that she had earned the promotion, HR Officer Baldauf had recommended her for the promotion, that her performance justified the promotion, that it was a career ladder promotion, and that after Baldauf left there had been no lapse in HR work.

48. Per Chief of Staff Fernstrom's instructions in December 2006, Plaintiff processed the promotion of a temporary white female, GS-7 to a permanent GS-9 position and a Quality Step Increase (QSI) for a another white female employee, GS-15/9 to a GS-15/10.

49. Under National Endowment of the Humanities (NEH) directives which are used to govern performance management at IMLS, all IMLS employees are required to have

annual performance appraisals.

### V. First Cause of Action
### (Employment Discrimination)

50.   Plaintiff realleges the allegations of Paragraphs 1- 49 again as if fully set forth herein.

51.   Plaintiff was treated differently in the terms and conditions of her employment due to her race and/or sex by the Defendant in violation of Title VII of the Civil Rights Act of 1964, as amended.

52.   Plaintiff, an African American, was treated differently in the terms and conditions of her employment and retaliated against by the Defendant because she complained about her treatment by a white, female supervisor, in violation of Titile VII of the Civil Rights Act of 1964, as amended.

53.   Plaintiff was treated differently in the terms and conditions of her employment and retaliated against by the Defendant for complaining about a white supervisor, the treatment of other minorities, and subjected to a hostile and unhealthy work environment in violation of Title VII of the Civil Rights Act of 1964, as amended,.

54.   In or about December 2006, Plaintiff timely sought employment counseling for discrimination and retaliation, started receiving employment counsel on or about January 20, 2007, and on or about March 20, 2007, timely filed a formal complaint of discrimination and retaliation against the Institute for Museum and Library Services (IMLS).

55.   Subsequently, Plaintiff requested a hearing before an Equal Employment Opportunity Commission Administrative Judge, but now has decided to pursue her claim in Federal court.

56. Plaintiff's EEO Complaint was filed on or about March 20, 2007, and has been pending in the agency administrative process over 180 days.

57. Plaintiff has exhausted all administrative prerequisites prior to filing this lawsuit under Title VII of the Civil Rights Act of 1964, as amended.

### VI. Second Cause of Action
### (Retaliation)

58. Plaintiff realleges the allegations of Paragraphs 1- 49 again as if fully set forth herein.

59. Plaintiff was treated differently in the terms and conditions of her employment and retaliated against by Defendant because of her race and/or sex because she complained about her treatment by a white supervisor, sought a performance appraisal as required by Agency procedures, and requested a career ladder promotion, all in violation of Title VII of the Civil Rights Act of 1964, as amended.

60. In or about December 2006, Plaintiff timely sought employment counseling for discrimination and retaliation, and started receiving employment counseling on or about January 20, 2007, and on or about March 20, 2007 timely filed a formal complaint of discrimination and retaliation with the Institute for Museum and Library Services (IMLS).

61. Subsequently, Plaintiff requested a hearing before an Equal Employment Opportunity Commission Administrative Judge, but now has decided to pursue her claim in Federal court.

62. Plaintiff's EEO Complaint was filed on or about March 20, 2007, and has been pending in the agency administrative process over 180 days.

63. Plaintiff has exhausted all administrative prerequisites prior to filing this lawsuit under Title VII of the Civil Rights Act of 1964, as amended.

### VII. Third Cause of Action
### (Hostile Work Environment)

64. Plaintiff realleges the allegations of Paragraphs 1- 49 again as if fully set forth herein.

65. Defendant, and the actions and conduct of its Chief of Staff, supervisors and others created and perpetuated a hostile, discriminatory, retaliatory and unhealthy work environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

**WHEREFORE** Plaintiff, Marsha L. Booker, respectfully prays this Honorable Court to advance this case on its docket, Order a jury trial at the earliest practicable date, and cause this case to be in every way expedited, and upon such hearing to:

A.  Issue a declaratory judgment that Defendant's acts and practices complained of herein violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended;

B.  Order Defendant to make Plaintiff whole for the discrimination and retaliation, and hostile work environment which she suffered as a result of the acts and practices as described herein, by providing appropriate back pay and other wages and benefits in the amount to be shown at trial;

C.  Grant Plaintiff judgment against Defendant for damages in the amount of $300,000 as a result of the aforementioned and retaliatory acts and practices, and the hostile and unhealthy work environment to which she was subjected.

D.  Grant Plaintiff judgment against the Defendant awarding Plaintiff attorney fees and costs for all proceedings; and

    E.    Grant such other and further relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

                                                    Respectfully submitted,

                                                    _____
                                                    Nathaniel Baccus, III
                                                    1629 K Street, N.W., Suite 300
                                                    Washington, D.C. 20006
                                                    (202) 349-1688

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Marsha L. Booker

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Wash, DC
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
Anne-Imelda M. Radice, Ph.D., Director
Institute for Museum and Library Services

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Wash, DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Nathaniel Baccus, III    (202) 349-1688
1629 K Street, NW, Suite 300
Washington, D.C. 20006

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust
☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes:
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ H. *Employment Discrimination*<br>☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Title VII, Civil Rights Act of 1964, as amended, Employment Discrimination/Retaliation Case.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   **DEMAND $** 300,000.00   Check YES only if demanded in complaint  **JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO   If yes, please complete related case form.

DATE August 27, 2008   SIGNATURE OF ATTORNEY OF RECORD  /s/

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.